UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MARK W. DUBUQUE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:16 CV 1244 RWS |
| | ) | |
| UNITED STATES DEPARTMENT OF THE AIR FORCE and | ) ) | |
| | ) | |
| AIR FORCE OFFICE OF SPECIAL INVESTIGATIONS, | ) ) | |
| | ) | |
| Defendants. | ) ) | |

# MEMORANDUM AND ORDER

Plaintiff Mark W. Dubuque ("Dubuque") alleges that Defendants United States Department of the Air Force and Air Force Office of Special Investigations (collectively, "Defendants") violated the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, by redacting and failing to produce certain documents concerning a polygraph examination of Dubuque. Defendants submitted a motion for summary judgment. Based upon a review of the record before the court, I will enter summary judgment in Defendants' favor.

   I.   *Background*

The following facts in this matter are undisputed. While Dubuque was employed by the Boeing Company, Defendants investigated Dubuque in a matter

described as "Sabotage of Company owned Files/Programs and Mishandling Classified Information" (the "Investigation").  In connection with the Investigation, Dubuque lost his access to work on Special Access programs.  On December 10, 2013, Dubuque was subject to a polygraph examination.

On March 31, 2015, Dubuque filed a FOIA request with Defendants requesting various records related to the Investigation.  The requested documents addressed matters including Dubuque's Special Access Program clearance, classified work agreements, and the polygraph examination.  On December 7, 2015, Dubuque filed an initial lawsuit against Defendants seeking compliance with the FOIA request. *See* Dubuque v. U.S. Dep't of the Air Force, et al., Cause No. 4:15-CV-01793 SNLJ (the "Initial Lawsuit").  Defendants produced more than two hundred documents to Dubuque in connection with the Initial Lawsuit.  However, Defendants withheld certain documents and redacted information, including documents related to the polygraph examination.  Upon settling the Initial Lawsuit and addressing a dispute concerning attorneys' fees, Dubuque and Defendants submitted a Joint Stipulation of Dismissal with Prejudice, which was so ordered by United States District Judge Limbaugh, Jr. on June 16, 2016.

Notwithstanding the settlement in the Initial Lawsuit, Dubuque retained the ability to file an administrative appeal and file the instant action.  The parties

remain in disagreement as to Defendants' ability to assert an exemption for materials related to the polygraph examination of Dubuque (the "Polygraph Request").[1] In responding to the Polygraph Request, Defendants redacted portions of the polygraph-related documents and withheld some materials entirely, asserting FOIA exemptions. Dubuque still seeks polygraph-related documents, such as the questions asked and answers given during the polygraph examination. Dubuque also seeks disclosure of polygraph charts, results, and physiological data, referred to as the "Technical Data," which were withheld entirely. The parties do not appear to dispute the general nature of the documents and information withheld, nor Defendants' stated rationale for nondisclosure.

As a result of the parties' inability to agree on the Polygraph Request, Dubuque filed this lawsuit. Dubuque seeks injunctive and other appropriate relief, specifically, the disclosure and release of responsive documents to the Polygraph Request and attorneys' fees and costs. Defendants have moved for summary judgment as a matter of law. Although Dubuque did not submit a cross-motion for summary judgment, the parties have suggested to the Court that this case should be

---

[1] Dubuque's FOIA request sought: "Documents relating to any polygraph examination (whether or not concluded)[of Plaintiff], including but not limited to a polygraph examination conducted on or about December 10, 2013, including but not limited to the name of the person conducting the examination, the questions asked and the answers given, and the results and analysis of the results." Doc. No. [1-1].

3

decided at the summary judgment stage. *See* Doc. No. [9]. Dubuque further submitted a Motion to Strike in connection with the Motion for Summary Judgment, concerning the validity of certain assertions by Defendants. *See* Doc. No. [35].

II. *Legal Standard*

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Lynn v. Deaconess Medical Center, 160 F.3d 484, 486 (8th Cir. 1998) (citing Fed. R. Civ. P. 56(c)). The party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the affidavits, pleadings, depositions, answers to interrogatories, and admissions on file which it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When such a motion is made and supported by the movant, the nonmoving party may not rest on his pleadings but must produce sufficient evidence to support the existence of the essential elements of his case on which he bears the burden of proof. Id. at 324. In resisting a properly supported motion for summary judgment, the plaintiff has an affirmative burden to designate specific facts creating a triable controversy.

Crossley v. Georgia Pacific Corp., 355 F.3d 1112, 1113 (8th Cir. 2004).

FOIA aims "to provide wide-ranging public access to government documents." Miller v. U.S. Dep't of Agric., 13 F.3d 260, 262 (8th Cir. 1993). FOIA generally mandates the disclosure of records upon request, but provides for nine statutory exemptions which allow the government to withhold information and documentation under certain circumstances. 5 U.S.C. § 552(b). "These exemptions are to be narrowly construed to ensure that disclosure, rather than secrecy, remains the primary objective of the Act." Miller, 13 F.3d at 262 (citing Dep't of the Air Force v. Rose, 425 U.S. 352, 361 (1976)). FOIA provides for *de novo* review by a district court of an agency decision to withhold requested information. 5 U.S.C. § 552(a)(4)(B). The agency has the burden of demonstrating that an exemption applies. Id. "In a FOIA case, summary judgment is available to a defendant agency where 'the agency proves that it has fully discharged its obligations under FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester.'" Mo. Coal. for Env't Found. v. U.S. Army Corps of Eng'rs, 542 F.3d 1204, 1209 (8th Cir. 2008) (quoting Miller v. U.S. Dep't of State, 779 F.2d 1378, 1382 (8th Cir. 1985)). In considering a motion for summary judgment under FOIA, the court's primary role "is to review the adequacy of the affidavits and other evidence

5

presented by the Government in support of its position." Cox v. U.S. Dep't of Justice, 576 F.2d 1302, 1312 (8th Cir. 1978). "If the Government fairly describes the content of the material withheld and adequately states its ground for non-disclosure, and if those grounds are reasonable and consistent with the applicable law, the district court should uphold the Government's position." Id.

III. *Discussion*

After a review of the record before me and based upon the reasons that follow, I will grant Defendants' Motion for Summary Judgment. The parties disagree as to whether Defendants were entitled to withhold documents and redact information related to the Polygraph Request pursuant to Exemption 7(E), which is codified at 5 U.S.C. § 552(b)(7)(E) ("Exemption 7(E)").[2]

*a. Exemption 7(E)*

Exemption 7(E) authorizes agency non-disclosure of "records or information compiled for law enforcement purposes" if production "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such

---

[2] In their memorandum in support of the motion for summary judgment, Defendants also discuss personal information redacted pursuant to 5 U.S.C. § 552(b)(6) and 5 U.S.C. § 552(b)(7)(C) (commonly referred to as "Exemption 6" and "Exemption 7(C)," respectively), primarily employee names and initials. Dubuque states that he is not seeking any of the information which was redacted pursuant to Exemptions 6 and 7(C), so I will not address those exemptions here.

disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Under Exemption 7, an agency must first meet the threshold of demonstrating that the documents sought were "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7); *see* <u>John Doe Agency v. John Doe Corp.</u>, 493 U.S. 146, 153 (1989) ("Before it may invoke [Exemption 7], the Government has the burden of proving the existence of ... a compilation for such a purpose."). Here, this threshold is satisfied because Defendants use polygraph examinations in investigations. *See* Hunter Decl. para. 2. ("[T]he use of polygraph technology is authorized to assist in the resolution of criminal investigations and inquiries.").

Next, under the subsection of Exemption 7(E), the agency must demonstrate that production "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). With respect to the "circumvention" portion of the statute, Exemption 7(E) establishes a relatively low burden. *See* <u>Mayer Brown LLP v. I.R.S.</u>, 562 F.3d 1190, 1193 (D.C.Cir. 2009) ("Risk of circumvention is not required—only an expectation of such a risk. Moreover, this expectation of a risk of circumvention need not be undeniable or

universal; the risk need only be '*reasonably*' expected."). Here, Defendants assert that Exemption 7(E) is satisfied because disclosure of the polygraph policies, procedures, and records at issue could reasonably be expected to be used to circumvent the law and would disclose techniques, procedures, and guidelines for law enforcement investigations or prosecutions. In particular, Defendants argue that disclosure of examination details could weaken or eliminate the usefulness or effectiveness of polygraph testing. *See* Hunter Decl. para. 7 (Polygraph techniques "perform most effectively when the examinee is unaware of polygraph theory and methodology."). Dubuque argues that Exemption 7(E) should not prevent disclosure, particularly because the materials sought are publicly available.

Although there is little authority in this jurisdiction addressing polygraph examination materials, other courts tend to defer to agency Exemption 7(E) determinations under similar circumstances. *See, e.g.,* Sack v. U.S. Dep't of Def., 823 F.3d 687 (D.C.Cir. 2016) (finding that agency documents about polygraph examinations were exempt from disclosure under Exemption 7(E), because reports were compiled for law enforcement purposes, assisted law enforcement in deterring illegal activity and ensuring national security, and contained information about investigative techniques and procedures and other information which could be used to subvert investigations); Piper v. U.S. Dep't of Justice, 294 F.Supp.2d 13

(D.D.C. 2003), *aff'd*, 222 Fed.Appx. 1 (D.D.C. 2007), *cert. denied*, 552 U.S. 813 (2007) (FBI polygraph examination results were exempt under Exemption 7(E) because information could disclose identity of logistical considerations involved in polygraph examinations and could allow criminals to extrapolate patterns and methods to questioning techniques. The court held "[i]t is widely recognized that release of information with regard to an individual test could foreseeably circumvent the entire polygraph process."); Edmonds v. F.B.I., 272 F.Supp.2d 35 (D.D.C. 2003) (polygraph information was properly denied to FBI whistleblower under Exemption 7(E)). On the whole, these cases suggest that Exemption 7(E) should apply under the circumstances.

   *b. Agency Affidavits*

Defendants submitted agency affidavits in support of their argument for Exemption 7(E) application. An agency may use affidavits to explain why an exemption applies, which courts will accept as credible in the absence of bad faith. *See* Miller, 779 F.2d 1378 (an agency carries its burden of proof by providing affidavits explaining applicability of an exemption); Cox, 576 F.2d at 1312 ("The court is entitled to accept the credibility of the affidavits, so long as it has no reason to question the good faith of the agency."); Davis v. C.I.A., 711 F.2d 858, 860 (8th Cir.1983) (per curiam) (a district court may forego discovery and award

9

summary judgment based on relatively detailed, nonconclusory agency affidavits submitted in good faith).  While agency affidavits generally receive "substantial weight," they must include more than "barren assertions" that a document is exempt. Madel v. U.S. Dep't of Justice, 784 F.3d 448, 452 (8th Cir. 2015), citing Miller, 779 F.2d at 1387.  The affidavits should "justify the claimed exclusion of each document by correlating the purpose for exemption with the actual portion of the document which is alleged to be exempt." Id.

In this case, Defendants provided several affidavits in support of their Motion.[3]  Under the Declaration of Robert B. Hunter ("Hunter"), Hunter declares that he was personally responsible for the polygraph-related redactions and withholding.  *See* Doc. No. [16-1].  Hunter discusses various relevant aspects of the polygraph examination, including the types of questions asked, process, potential outcomes, data, and techniques.  Hunter also specifically explains each redaction and withholding decision, including providing detailed explanation and logical reasoning regarding the application of Exemption 7(E).  Defendants also submitted two supplemental declarations by Hunter in response to certain arguments made by Dubuque.  The affidavits provide sufficient explanation and

---

[3] The Declaration of Tiffany G. McClurkin (Doc. No. [16-2]) is not discussed here because it concerns information redacted pursuant to Exemptions 6 and 7(C), which is not in dispute.

10

reasoning and there is no indication that Defendants acted in bad faith in submitting the affidavits. As a result, Defendants' affidavits satisfy their burden of proof regarding applicability of Exemption 7(E).

*c. Public Domain Doctrine*

The government may waive its ability to assert a FOIA exemption under certain circumstances. Under the public domain doctrine, the government can be ordered to disclose materials which it previously officially disclosed or acknowledged in a permanent public record. *See, e.g.*, Muslim Advocates v. U.S. Dep't of Justice, 833 F.Supp.2d 92, 99 (D.D.C. 2011) (quoting Cottone v. Reno, 193 F.3d 550, 554 (D.C.Cir. 1999)) ("[M]aterials normally immunized from disclosure under FOIA lose their protective cloak once disclosed and preserved in a permanent public record."); Shapiro v. U.S. Department of Justice, 153 F.Supp.3d 253, 273 (D.D.C. 2016) ("[T]he purpose of Exemption 7(E) is to prevent the public from learning about the existence of confidential law enforcement techniques, not to prevent it from learning about the use of already-disclosed law enforcement techniques."); Piper v. U.S. Dep't of Justice, 294 F.Supp.2d at 16 (rejecting argument that polygraph techniques were widely known); F.B.I. v. Abramson, 456 U.S. 615 (1982) (Exemption 7 applicability is not waived when records which were originally compiled for law enforcement

purposes are reproduced or summarized in a new document prepared for non-law enforcement purposes.).

Dubuque argues that Defendants waived their ability to rely upon Exemption 7(E) because the information he seeks is already known and publicly available. Dubuque references two polygraph manuals which he allegedly found on the internet and may be attributable to Defendants, entitled "Federal Psychophysiological Detection of Deception Examiner Handbook" (Doc. No. [23-3]) and "Polygraph Countermeasure Handbook" (Doc. No. [23-4]). Dubuque asserts that these manuals provide specific information such as the content and sequencing of polygraph questions, which is the type of information he requested. Defendants question the validity, currency, and source of these manuals. Under the second supplemental Declaration of Robert B. Hunter (the "Supplemental Declaration"), Hunter makes certain statements to this effect. *See* Doc. No. [34-1]. Dubuque moved to strike paragraphs two through four of the Supplemental Declaration, arguing that Hunter's statements are speculative and based upon inadmissible hearsay. *See* Doc. No. [35]. Defendants failed to respond to the motion to strike, so I will grant it. As a result, I have considered whether Defendants appear to have made any applicable polygraph materials available in the public domain or otherwise.

12

I decline to apply the public domain doctrine in this case. The manuals relied on by Dubuque are insufficient to bar application of Exemption 7(E). It is not entirely clear from the web addresses and exhibits provided by Dubuque whether Defendants have publicly disclosed these manuals or similar documents, or how similar these documents are to the documents sought. *See* Muslim Advocates, 833 F.Supp.2d at 102 (For the doctrine to apply, plaintiff must satisfy "initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld."). A link to an unofficial website does not constitute a permanent public record. Dubuque does not establish how Defendants would have otherwise waived Exemption 7(E), for example, by providing him with some of the requested information or publicly publishing the information elsewhere. In any event, regardless of the source, validity, and currency of the purported manuals, Defendants have satisfied their burden under Exemption 7(E).

    *d. Segregability*

I must perform a segregability analysis to determine whether any non-exempt portions of the records at issue can be segregated from exempt portions, allowing for additional disclosure. *See* 5 U.S.C. § 552(b) ("Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection.");

Mo. Coal., 542 F.3d at 1212 (requiring district court to make "an express finding" regarding segregability). Non-exempt portions of documents must be disclosed unless they are "inextricably intertwined" with exempt portions, and an entire document may not be withheld because it includes some material which is subject to an exemption. Id. Here, the record indicates that Defendants disclosed a number of documents in whole or in part. Defendants provided specified designations for the redacted portions of the partially disclosed polygraph records. With respect to the Technical Data, which was withheld entirely, Hunter submitted a Supplemental Declaration asserting that the polygraph charts are not segregable because the questions, answers, and comments that are noted the software was designed to preclude data alteration and any attempt to alter the data would corrupt the chart. *See* Doc. No. [26-1]. Based upon this record, Defendants appear to have disclosed all reasonably segregable information and no further segregation is required.

For the foregoing reasons, and based upon review of the record before the Court, I conclude that Dubuque has not demonstrated a genuine issue of material fact that would preclude the application of Exemption 7(E). Defendants have established the predicates for the application of Exemption 7(E) to the disputed materials. As a result, Defendants have discharged their duties under FOIA and

are entitled to summary judgment. I will grant Defendants' Motion for Summary Judgment.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Strike [35] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment [15] is **GRANTED**.

*/s/ Rodney W. Sippel*
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 6th day of November, 2017.